UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM L. NOVAK, | : |
| | : |
| Plaintiff, | : |
| | : |
| -vs- | : CIVIL ACTION NO. 04-0632 |
| | : |
| PROGRESSIVE HALCYON | : |
| INSURANCE COMPANY (FORMALLY | : |
| HALCYON INSURANCE COMPANY), | : (Judge Kosik) |
| PROGRESSIVE CASUALTY | : |
| INSURANCE COMPANY AND | : |
| PROGRESSIVE INSURANCE GROUP, | : |
| A/K/A PROGRESSIVE | : |
| | : |
| Defendants | : |

## **MEMORANDUM AND ORDER**

We have several motions *in limine* filed by both parties, all dealing with evidentiary issues.

I.

Plaintiff filed a motion to preclude "after-the-fact" evidence or testimony which was not possessed or considered by defendants during the handling of plaintiff's first-party claim, the subject of this proceeding. A similar motion was filed with respect to evidence or testimony from a potential defense witness, Daniel A. Wecht, M.D., based on his report of March 14, 2005.

The first motion asked that we defer ruling and allow a supplemental memorandum after defendants produced their exhibit and witness list. This was ultimately done and plaintiff reduced her motion to specific items on June 20, 2005, Document 110, in a supplemental memorandum.[1] Defendants addressed the plaintiff's supplement in a sur reply in Document 115, filed July 7, 2005.

Plaintiff claims that none of the after-the-fact evidence, medical or otherwise, suggests that the insured plaintiff successfully hid any material during the pendency of her claim which would offer a reason to deny it. Nothing shows that there was any other traumatic event which would account for plaintiff's cervical and lumbar herniations and surgeries. It does not appear that defendants dispute these assertions. Nor do defendants offer any evidence to support any contrary assertion.

The after-the-fact evidence plaintiff seeks to preclude includes:

***Defendants' Exhibit 12*** - Progressive's claims file regarding UIM claim. The claim was not made until May 2003, which was after defendants finally decided to pay plaintiff's cervical bills in February 2003 and lumbar bills in March 2003. Defendants seek to show that calls from a representative of Progressive to Nationwide on June 30, 2003 and September 2003 reflected questions on causation by Progressive and Nationwide with respect to a claim plaintiff made against Nationwide. Defendants seek to establish that others had the same questions concerning plaintiff's lumbar and cervical conditions as did Progressive. It would be relevant to negate bad faith.

---

[1] The list included Defendants' Trial Exhibits 13 and 14, Medical Expert Opinion and CV of Dr. Wecht, dated March 14, 2005, the subject of a separate motion.

2

***Defendants' Exhibit 23*** - The Nationwide Insurance Company file containing information with respect to a separate claim by plaintiff, partly alluded to in discussing Exhibit 12 above.  Its relevance would be similar in that it would show that others had the same questions about a cervical connection. This evidence would reflect that Progressive's conduct was not unreasonable in order to negate bad faith.  Plaintiff responds that this is not relevant evidence in that plaintiff's settlement demand was not made in Nationwide's case until May 28, 2003, well after Progressive decided to pay on its claims.

We agree that this evidence is not relevant as direct evidence.  The basic premise of plaintiff's motion is that Progressive's conduct is to be assessed on what evidence defendants had when their decision to pay the claim was made.  More specifically, whether at the time defendants had a reasonable basis to challenge causation based on the information they or their experts had in hand or readily accessible.  To expand the evidence into other cases simply would result in asking a jury to consider matters collateral and not relevant on the principal issues.

***Defendants' Exhibits 13 and 14*** - Medical Expert Opinion and CV of Dr. Daniel A. Wecht, dated March 14, 2005.

Plaintiff seeks to preclude Dr. Wecht's opinions which may be based on after-the-fact evidence in the form of additional medical records previously withheld for reasons unrelated to plaintiff, or other claim records not previously reviewed by the doctor with relation to his medical opinion or opinions prior to a decision to pay plaintiff's claim. We agree for reasons already stated.   These records would include Defendants' Exhibits 26 through 30, relating to plaintiff to the extent those records

3

were not in the defendants' file when the claim decisions were made. We also include the IME report of Dr. Kenneth Gentileeza, which was an after-the-fact report in a separate claim against Nationwide.[2]

Plaintiff also objects to any opinions from Dr. Wecht on the reasonableness of the defendants' conduct in handling plaintiff's claim. Dr. Wecht's CV certainly attests to his standing in the medical profession. It does not offer any history which would qualify him to offer opinions on the reasonableness of the defendants' handling of plaintiff's insurance claim. We will not allow such an opinion.

Plaintiff objects to any relevant opinions Dr. Wecht may offer as being equivocal and therefore insufficient. While this appears to be the case, defendants claim he generally stated his opinions as being made within a reasonably degree of certainty. Since it will be the witness' testimony and not the report which may be offered, we will defer ruling on the admissibility of his opinions.

Finally, there is an objection to the relevance of any medical opinions as to plaintiff's current prognosis and future treatment of plaintiff. Defendants concede that at this point, such may be the case. The <u>time frame</u> for defendants continuing to pay plaintiff's claim may be relevant on the issue of bad faith, i.e., reasonableness of their conduct.

---

[2]It should be noted that Dr. Wecht's report to defendants during the consideration of plaintiff's claim rejected the existence of her condition as being causely related to accident. His opinion was disregarded and Progressive paid the claim. To this end, defendants may be bound by their admission of the causal relationship if that is even pertinent.

(a) **Defendants' Exhibits 16, 17 and 18** - Commonwealth of Pennsylvania, Department of Public Welfare Records regarding Ms. Novak.

(b) **Defendants' Exhibit 31** - Update Statement of Claims from the Department of Welfare.

(c) **Defendants' Exhibit 33** - Explanations of Reimbursement dated 2/1/05, 10/7/04 - 10/13/04, 9/21/04 - 10/08/04 and 1/14/04.

Plaintiff claims these are after-the-fact evidence because either the defendants did not see the records in evaluating plaintiff's claim, or they represent payments post-dating the relevant time periods. While this is correct, it may be the basis for precluding their use as direct evidence. In the case of exhibits alluded to in (a) above, they may be relevant in the cross examination of plaintiff. Plaintiff has contended that Progressive's conduct required her to apply to welfare in order to pay medical bills incurred due to her accident. Progressive claims her turning to welfare had nothing to do with her accident or their assessment of her claim.

In the case of exhibits in (b) and (c) above, they may be relevant to show defendants' reasonableness in processing plaintiff's case if the continuing payments were made after their decision to pay plaintiff <u>but before</u> the litigation was commenced. It is unclear at this time if such will be the case.

II.

Defendants have filed three motions to preclude testimony from three experts plaintiff intends to call.

Two of the motions deal with Jim Chett, CPCU, an expert in insurance claims handling, practices and management, and Constance B. Foster, an attorney and

5

former Insurance Commissioner for the Commonwealth of Pennsylvania. There appears to be a minimal dispute as to the experience and qualifications of Mr. Chett. In the case of Ms. Foster who, except for her tenure as Insurance Commissioner, is a lawyer associated with law firms with a practice devoted to insurance matters. While qualified as an attorney with knowledge of insurance statutes and regulations, she offers nothing in the way of experience comparable to Mr. Chett in the internal handling of claims.

We agree generally with the authority and rationale that an expert opinion is not required in a bad faith case. Unlike a malpractice case where standards of the profession are an issue, bad faith is strictly a legal concept dealing with the insurer's state of mind in processing an insured party's claim. The insurer's conduct would not be judged by standards in the insurance industry. Both parties are in agreement that an expert in a bad faith case cannot testify to a legal conclusion that an insurer acted in bad faith because a jury is capable of making a distinction between "good" and "bad." They disagree on the extent an expert may opine on the reasonableness of the basis in denying a claim and that an insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We agree with the defense that an opinion on these elements of a bad faith claim is tantamount to testifying on the ultimate legal issue, i.e., drawing legal conclusions whether a defendant's behavior violates statutory provisions. Of course, we need to caution that our reasoning does not mean that at no time should a court exercise its discretion in allowing expert opinion. There may be many appropriate areas to allow expert testimony, including the adequacy of an insurer's investigation which would be of assistance to a jury. This

could include the appropriateness of insurer's claims practices, but with limited parameters such as avoiding explicit reference to regulations and statutes, a violation of which would not be evidence of negligence itself, unless, as we have previously ruled, they constitute repeated conduct of <u>previous</u> <u>similar</u> violations of the <u>same</u> <u>statutes</u> and <u>regulations</u> in the handling of claims evidencing a general business practice. To this end, expert testimony could be relevant even though we do not deem it necessary.

Fed.R.Evid. 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it enhances an ultimate issue to be decided by the trier of fact." Some courts have stated that Rule 704 remains the general proscription against opinions on "ultimate issues" and shifts the focus to whether the testimony is "otherwise admissible." <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1219 (6th Cir. 1997). The court then alluded to the advisory committee notes to Rule 704 which indicates the protections afforded by the other rules of evidence in determining if the opinions of the ultimate issues are "otherwise admissible." The advisory committee offered:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus, the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural

7

>objects of his bounty and to formulate a rational scheme
>of distribution?" would be allowed.  McCormick §12.

*Id.* at 1219-1220.  The court went on to state that testimony offering nothing more than a legal conclusion, i.e., which does little more than tell a jury what result to reach, is properly excludable under the rule.

While there are cases in various circuits which are in conflict, they demonstrate there are no bright lines to afford trial judges guidance in exercising their discretion in passing on an issue such as is implicated by Rule 704 as discussed above. Illustrative examples include: *United States v. Sheffey*, 57 F.3d 1419 (6th Cir. 1995)(lay eye witnesses could conclude that a person drove recklessly and in extreme danger of human life because, although legal conclusions, they were presenting opinions that were in the vernacular as opposed to a legal conclusion); *Heflin v. Stewart County*, 958 F.2d 709 (6th Cir. 1992)(an expert in a §1983 case could testify that a prison official acted with "deliberate indifference" because it was used in a way a layman would use it); *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)(an expert described conduct as "grossly negligent" comparable to "deliberately indifferent."  The court overturned a verdict, holding that these were inadmissible legal conclusions); *Hygh v. Jacobs*, 961 F.2d 359, 363-365 (2d Cir. 1992)(an expert expressing a legal standard was unacceptable); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991)(allowing admission of custom or practice so long as expert did not give his opinions as to legal duties that arose under the law); *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)(use of phrase "personal funds" as generally understood was excludable because it constituted an impermissible instruction on the law); *Marx &*

8

*Co..Inc. v. Diner's Club, Inc.*, 550 F.2d 505 (2d Cir. 1977)(an expert could testify as to legal obligations of parties under a contract, but should not be allowed to testify whether a delay of one year was unreasonable); *Haberern v. Kaupp Vascular Surgeons Ltd.*, 812 F.Supp. 1376 (E.D.Pa. 1992)(an attorney expert could testify concerning facts surrounding ordinary practices of those engaged in certain occupations or industries, but he cannot offer an opinion on a question of law); *Dattilo v. State Farm Insurance Company*, 1997 WL 644076 (E.D.Pa.), aff. 168 F.3d 478 (3d Cir. 1998)(in granting summary judgment for the defense, the district court rejected expert testimony in a bad faith case). In *Klinger v. State Farm Mutual Auto Insurance Co.*, 115 F.3d 230 (3d Cir. 1997), an expert testified that State Farm acted recklessly and unreasonably, both legal conclusions, but it appears it was done without objection. As such, there was no Rule 704 issue.

Consistent with the aforementioned reasoning, the opinions of Mr. Chett could be offered. However, in the case of Constance Foster, we conclude her opinions would be inappropriate as nothing but legal conclusions from an expert of questionable experience and qualification in insurances claims handling and settlement.[3]

The defendants' third motion in limine seeks to preclude the testimony of Jonathan Cunitz. Defendants object to any conclusions from the witness as to an appropriate amount of punitive damages which should be awarded in the event the

---

[3] A review of each expert's opinion reflects opinions as legal conclusions which would leave nothing for the jury to decide or in some cases, the court acting as a fact finder. These must be excluded.

jury determines that the defendants' conduct constitutes bad faith. In this context, the witness offers opinions on legal matters not within his province. Next, the witness would offer evidence on the interest calculations to which plaintiff may be entitled after a finding of bad faith.

Plaintiff responds that the defense misconstrues Cunitz's report because it is not intended to have him testify to an appropriate amount of punitive damages even though his report alludes to an amount. Essentially, they propose the same result in having him testify to an analysis of financial worth and what percentage of net worth would not hamper the future financial operations. Ultimately, the financial worth of the defendants may be relevant to awarding punitive damages, but not in the context of plaintiff's proposed evidence. While plaintiff's offered evidence may have been helpful to the court in other cases, it has been in non-jury cases which are tried before a judge without a jury in the Pennsylvania courts.

Although the witness's interest calculations may be helpful in determining recoverable compensatory damages in the form of interest on late payments, there is no reason why this amount could not be calculated and admitted through stipulation. Any other interest which may be due plaintiff under §8371 would in all events be of an equitable nature to be awarded by the court if found to be appropriate.

The resolution of the issues in this Memorandum are **SO ORDERED**.

s/Edwin M. Kosik<br>
United States District Judge

Dated: September 13, 2005